Name: ARTHUR LOPEZ
Address: 2251 Bloomfield Lane
CORONA, California  92882
Phone: 949.467.0937
Plaintiff In Pro Per   No Fax
No e-mail

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ARTHUR LOPEZ                          SACV No.: **18-0093 AG**    (DFMx)
                                      (To be supplied by the Clerk)

PLAINTIFF,                     )  COMPLAINT FOR:

vs.                            )  Deprivation of Rights under: Fair Housing Act

The Irvine Company Apartment   )  Title 42 U.S.C. § 3601-3619
Communities, Inc.;             )  Title 42 U.S.C. § 1985 + 1983
Newport Bluffs LLC,            )  Unfair Business Practice
Irvine Company LLC, The),
Newport BORDEAUX               )  Jury Trial Demanded
Apartments LLC   DEFENDANT(S).    Does 1-100)

---

## I. JURISDICTION

1. This Court has jurisdiction under 28 U.S.C. § 1331 and
28 U.S.C. § 1343

Federal question arises pursuant to
the Fair Housing Act 42 U.S.C.
§ 3601-3619 and 42 U.S.C. § 1985 + 1983.

---
1
---
*Page Number*

1
2

## II. VENUE

3  2. Venue is proper pursuant to 28 U.S.C. §1391,
4  Because defendants, The Irvine Company
5  Apartment Communities, Inc, Newport Bluffs LLC,
6  Irvine Company, LLC, The  are located in
7  Orange County, California .
8
9

## III. PARTIES

10
11
12  3.  Plaintiff's name is Arthur Lopez . Plaintiff resides
13  at: 2251 Bloomfield Lane
14  Corona, California 92882
15
16
17
18  4. Defendant The Irvine Company Apartment
19  Communities, Inc.,
20  550 Newport Center Drive
21  Newport Beach, CA 92660
22  *
23
24  5. Defendant Newport Bluffs LLC
25  Main: 550 Newport Center Drive
26  Newport Beach, CA 92660
27
28  Business Location: 100 Vilaggio ; Newport Beach, CA 92660-9021
*

2

*Page Number*

6. Defendant Irvine Company LLC, THE

550 Newport Center Drive,
Newport Beach, Ca 92660

*

___. Defendant _____

*
Agent for Service: "Corporation Service
Company which will Do Business In
California As CSC — Lawyers Incorporating
Service". 2710 Gateway Oaks Drive, Suite 150n
Sacramento, CA 95833

___. Defendant _____

7. Defendant Newport Bordeaux Apartments LLC

Main: 550 Newport CENTER Drive
Newport Beach, CA 92660

Business Location: 1 Ambroise;
Newport Beach, CA 92657

*
3

Page Number

# IV. STATEMENT OF FACTS

This case is brought against defendants, The Irvine Company Apartment Communities, Inc.; Newport Bluffs LLC; Irvine Company LLC, The; Newport Bordeaux Apartments LLC by Plaintiff, Arthur Lopez for deprivation of his rights as provided under the Fair Housing Act - 42 U.S.C. 3604 and 42 U.S.C. 1985 + 1983. Plaintiff who was born February 7, 1967

in Los Angeles, California is of Mexican-Hispanic Heritage/Race and is the Father of Four children for whom he was the primary caregiver of during the period defendants unlawful acts occurred. In fact, the following complaint details will describe how the defendants conspired to interfere with Plaintiffs rights as a matter

of standard business practice due to his race, sex + familial status by refusing to rent apartments, discriminate in the terms, conditions and privileges of rental of an apartment dwelling over a period of 3-4 years. The most recent lease denial with defendants Newport Bluffs LLC,

The Irvine Company Apartment Communities, Inc.,

Irvine Company LLC and Newport Bordeaux Apartments LLC

1   Would have been January 18, 2016 effectively
Insert ¶ #
2   since Plaintiff had sought to
3   occupy and make effective apartment
4   rental on January 19, 2016. Unfortunately,
5   Defendants collectively conspired to
6   deprive Plaintiff and his family of Fair
7   Housing by denying an apartment rental
8   despite apartment units being available.
9
10  Defendants also as a matter of standard
Insert ¶ #
11  business practice discriminated against
12  Plaintiff in the terms, conditions and
13  privileges of rental apartment dwelling
14  due to the same protected classes of
15  sex/gender (male), race, familial
16  status.
17  In fact, Plaintiff was told his
18  family pet dog would not be permitted
19
Insert ¶ #
20  despite other tenants being allowed
21  to keep their dogs indoors. Additionally,
22  advertised pricing online would not be
23  honored despite presenting documentation
24  confirming lower price and instead higher
25  rate would be quoted in person, and imposed,
26  through leasing agents @ Leasing office.
27  Defendant Newport Bluffs LLC also harrassed
28  Plaintiff by issuing unjustified fees and
    notices to harm          5
Pro Se Clinic Form          Page Number
    character.

*Insert ¶ #* In fact, during plaintiff's inquiries to defendant Newport Bluffs LLC staff members from "Resident Services" confirmed Rent Payments received @ the defendants place of Business 100 Villaggio Newport Beach, Ca 92660 are delayed several days before they are posted to residents' accounts Triggering enormous late charges and 3 Day

*Insert ¶ #* "Notices to Pay or Surrender (Vacate) Apartment" harming Residents' Rental Payment History and then used as a detriment to resident/plaintiff ability to continue Fair Housing tenancy and/or be permitted to rent apartment dwellings at all defendant's properties.

*Insert ¶ #* Plaintiff was also denied apartment rental by defendant, Newport Bordeaux Apartments LLC in late 2015 as Plaintiff sought to transfer and continue residing in a "The Irvine Company Apartment Communities, Inc." property commencing January 19th, 2016. Upon learning of defendants unlawful violations of Fair Housing rights,

Plaintiff contacted by phone, and in person @ the office of Chairman/Owner Donald Bren @ 550 Newport Blvd., Newport Beach, CA 92660 and also discussed these serious issues with staff @ "The Irvine Company Apartment Communities, Inc." and General Manager Brent Christianson @ Newport Bluffs LLC and also Mgr. @ Newport Bordeaux Apartments LLC. All were made aware of the serious nature of the defendants' unlawful policies, protocols, standard operating procedures that are in violation of Fair Housing Act protections. Plaintiff also notified Federal and State authorities, CA Dept. of Fair Employment and Housing — Case # D 600341 — Inv. Nora Moreno 661-395-2562.

In addition to these unlawful acts, defendants "The Irvine Company Apartment Communities, Inc." (I.a.C.), Newport Bluffs, **LLC** and an additional (I.a.C.) property named Promontory Point located @ 200 Promontory Drive West, Newport Beach, CA 92660 - 866.828-7310 all refused to permit Plaintiff to rent apartment (2 Bdroom) dwelling for his family due to his familial status citing his 18 month old son as an impediment since Plaintiff had 3 other minor children (ages 11, 8, 7).

7

Page Number

Consequently, Plaintiff was compelled to buy a travel trailer, (approx #30K) and obtain rental space @ the Newport Dunes Travel Trailer Park @ Jamboree and P.C.H. in order to not disrupt Plaintiff's children same school enrollment. This created a very challenging environment for Plaintiff and the nurturing of his family.

In summary, Defendants monopoly on the apartment rental space in the Newport Beach area systematically violates minority - hispanic - African american's civil rights and rights provided under the Fair Housing Act and as such segregate these classes away from the Newport Beach/Irvine communities and consequently the unfortunate Master Planned Communities result with less than 1% African American (.53%) and Mexican-Hispanic 2.88%, and other Hispanic/Latino 1.51% and with the White Class an overwhelming 92.22% . These are the facts and to further exasperate the discrimination that is ever more prevalent the local policing agencies and local governance systematically as a matter of policy deprive Plaintiff/minorities U.S. constitutional rights to redress, equal protection under the law and therefore plaintiff seeks relief from this court for not only actual damages but also exemplary and punitive damages.

8

Page Number

Plaintiff has suffered tremendously along with his family as a result of defendant's discrimination against Plaintiff due to his male gender (being the primary caregiver of his 4 minor children), hispanic mexican race (Lopez last name), familial status (having four children, including baby Luke only 18 mos to 4 yrs old during the period described). In fact, Plaintiff has gone through a Divorce and his family unit disrupted premeditatively. For these reasons Plaintiff would seek Pain and Suffering damages along with attorney's fees and costs. Defendant's unlawful sinister acts to conspire to interfere with Plaintiff's civil rights, to Fair Housing — Rental, privileges are actionable for the recovery of damages under 42 U.S.C. § 1985 and 1983 and as such is Humbly and respectfully requested to the full extent of Federal Law.

Plaintiff respectfully requests court take judicial notice of exhibit "A", which reflects a copy of the full amount of the May Rent in the amount of $2635.00 payable in Certified funds from Federally chartered Schools First Federal Credit Union delivered to defendant Newport Bluffs LLC

CV-127 (09/09)                    PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

Resident Services Staff with Initials displayed as "Received 5/2/15" and also exhibit 'B' which reflects Defendant Newport Bluffs LLC ① Three Day Notice To Pay Rent or Surrender Possession ①② Notice To Perform Covenant or Deliver Possession of Premises dated 5/5/2015 delivered to Mexican Heritage Plaintiff on "Cinco De Mayo" via personal delivery to the front door residence of the "Lopez Family" Plaintiff submits these as clear and irrefutable evidence and confirmation of defendant's unrelenting discrimination, harrassment of Plaintiff and his family since the full rent due for May was paid timely and yet a notice to vacate was presented with malice on the Cinco De Mayo annual celebration commemorated by the Mexican Heritage in full knowledge rent had already been satisfied days in advance.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Deprivation of Rights under the Fair Housing Act
Title 42 U.S.C 53601-3619 and 1985, 1983
*insert title of cause of action*

**(As against Defendant(s):** ~~Irvine Company LLC, THE~~
The Irvine Company Apartment Communities, Inc. / Newport Bluff LLC

*Insert ¶ #*   Plaintiff Reiterates all claims described in Statement of Facts preceding.

Furthermore, Plaintiff, asserts claims against these defendants for the denial of an apartment dwelling for rent as petitioned by plaintiff to be effective January 19th, 2016 at the *Insert ¶ #* conclusion of the 11/14/14 - 1/18/16 lease, see exhibit 'C' dated 11/18/15 stating @ 60 days January 18, 2016 lease would end.

This unlawful acts are in violation of 42 U.S.C.83604 (a)(b)

*Insert ¶ #*   These acts of discrimination due to Plaintiff's Familial Status, Male gender, Mexican-Hispanic Race and also in retaliation for Plaintiff exerting his rights under the Fair Housing Act and Civil Rights.

11

Pro Se Clinic Form

1

## SECOND CAUSE OF ACTION

2  Deprivation of Rights under the Fair Housing Act Title 42

3  U.S.C. §3601-3619 and 1985, 1983

*Insert title of cause of action*

**(As against Defendant(s):** IRVINE Company LLC, THE

4  The Irvine Company Apartment Communities, Inc. / Newport Bordeaux Apartment

5  LLC

6

7  _____ Plaintiff reiterates all claims described in

*Insert ¶ #*

8  the proceeding Statement of Facts.

9  Furthermore, Plaintiff asserts claims against

10  defendants for the denial of apartment dwelling

11  rental as petitioned by Plaintiff to commence

12  January 19th, 2016 @ the conclusion of (IAC)

13  11/14/14 - 1/18/16 Lease agreement w/ Newport Bluffs

14  _____ Due to Plaintiff's Familial Status, Mexican-

*Insert ¶ #*

15  Hispanic Heritage and Male Gender. Also in

16  retaliation for Plaintiff exerting his rights

17

18  under the Fair Housing Act and Civil Rights

19  _____ These unlawful acts are in violation

20  *Insert ¶ #*

21  of 42 U.S.C. §3604 (a)(b)

22

23

24

25

26

27

28

*Pro Se Clinic Form*

12

*Page Number*

1

## THIRD CAUSE OF ACTION

2

The Irvine Company Apartment Communities Inc.,
Newport Bluffs, The Irvine Company LLC, THE,
Newport Bordeaux Apartments LLC

3  *insert title of cause of action*

**(As against Defendant(s):**

4

Deprivation of Rights under the Fair Housing Act 42 USC §3601-3619

5  and 1985, 19

6

7  _____ Plaintiff Reiterates all claims described

8  in Statement of Facts preceding.

9  Furthermore Plaintiff asserts claims

10  against these defendants for the discrimination

11  inflicted against Plaintiff due to his

12  Mexican-Hispanic Heritage, Male Gender

13

14  *Insert ¶ #* and Familial Status by depriving Plaintiff

15  of Peaceful living, subjecting him to harassment,

16  denial of rental apartments on numerous

17  occasions, imposing unlawful demands, fees and

18  depriving privileges; equal pricing, late charges unfairly,

19

20  _____ harming rental history profile premeditatively.

21  with malice for unlawful gain.

22

23

24

25

26

27

28

*Insert ¶ #*

13

_____

Page Number

Pro Se Clinic Form

## FOURTH CAUSE OF ACTION

(Deprivation of Rights under the Fair Housing Act)

*insert title of cause of action*  42 U.S.C. § 3601-3619, 1985, 1983

**(As against Defendant(s):** The Irvine Company Apartment Communities, INC,
Newport Bluffs LLC, Irvine Company, LLC, THE )

*Insert ¶ #*  Plaintiff asserts all claims described
in the preceeding Statement of Facts.
Furthermore, plaintiff asserts claims
against all defendants for the denial of a
rental apartment dwelling for rent as requested
by ~~plaintiff~~ in mid 2013 while his youngest

*Insert ¶ #*  child was approximately 18 months old and
was cited as cause for not making an
apartment available despite numerous
units being advertised for rent and ready
for occupation. Plaintiffs three other children

*Insert ¶ #*  were ages 11, 8, 7 during this period.

My (Our) Mexican Hispanic Heritage, Familial
status and male gender (as primary custodian/
caregiver of the minor children) were the cause
for the discrimination in violation of
42 U.S.C § 3604 and 1985, 1983

14

*Page Number*

1
2

## V. CAUSES OF ACTION

3
4

### FIFTH CAUSE OF ACTION

5
6

( Unfair Business Practice )

*insert title of cause of action*

7

(As against Defendant(s): All Listed Defendants

8

)

9
10

*Insert ¶ #*

___. Plaintiff asserts all the claims

11

previously listed in the preceeding

12

Statement of Facts and also

13

asserts this Cause of Action for

14

the Unfair Business Practice of

15
16

Discrimination, Inflated Pricing on Rent

17

*Insert ¶ #*

by not honoring advertised price, delaying posting

18

of rent payments to trigger enormous late

19

Charges and fees and Vacate Notices (3 Day)

20

Harm Rental History

21
22
23

*Insert ¶ #*

24
25
26
27
28

*14a*

*Page Number*

# V. CLAIMS

## Claim #1

___.   Plaintiff realleges and incorporates by reference all of the paragraphs above.

*Insert ¶ #*

___.   Plaintiff has a claim under 42 U.S.C. §1983 for violation of the following

*Insert ¶ #* federal constitutional or statutory civil right:

1985 + 3604 Fair Housing Act

- Unfair Business Practice -
Conspiracy to Interfere with Plaintiffs
Rights under the Fair Housing Act and
Civil Rights is a violation of 42 U.S.C. 1985

___.   The above civil right was violated by the following Defendants:

*Insert ¶ #*

All defendants listed

_____

_____

*(You may list facts supporting your claim. Be specific about how each Defendant violated this particular civil right.)*

*Insert ¶ #*

_____

_____

_____

_____

_____

_____

_____

___.   As a result of the Defendant's violation of the above civil right, Plaintiff

*Insert ¶ #* was harmed in the following way:

- Harm to Character, Reputation, Credit/Rental
Qualifications.
- Family Unity    - Relations with Law Enforcement
- Pain & Suffering    and Community

15

Pro Se Clinic Form                           *Page Number*

## VI. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requests: $100,000,000.00 minimum

*Insert ¶ #*

- Exemplary, Actual, punitive damages

- Pain and Suffering damages

*Insert ¶ #*

- All just awards court finds as fair

*Insert ¶ #*

*Insert ¶ #*

Dated: January 17th, 2018

Sign: Arthur Lopez

Print Name: ARTHUR LOPEZ

16

*Page Number*

Pro Se Clinic Form

1
2

## DEMAND FOR JURY TRIAL

3

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

4
5

Dated: _January 17th, 2018_

6

Sign: _Arthur Lopez_

7

Print Name: _ARTHUR LOPEZ_

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17

_Page Number_

# SCHOOLSFIRST
FEDERAL CREDIT UNION

P.O. Box 11547
Santa Ana, CA 92711
www.SchoolsFirstfcu.org

VOID AFTER SIX MONTHS

90-8200
3222

PRESS OR RUB
IF RED PADLOCK DISAPPEARS,
THIS DOCUMENT IS AUTHENTIC.

06 0001999154

05/02/15

Money Order

PAY   ** TWO THOUSAND SIX HUNDRED THIRTY FIVE DOLLARS AND 00 CENTS **

TO THE
ORDER OF   *Newport Blvffs Aps*

$2,635.00

*Cherie Lopez*
Purchaser's Signature

*2087 Loggia N.B*
Address

NOT VALID OVER $5,000.00

⑈0001999154⑈ ⑈322282001⑈06⑈735000000 1⑈

*Recvd 5/2/15*

*exh a*

*18*

# THREE DAY NOTICE TO PAY RENT
# OR SURRENDER POSSESSION

TO:

**Arthur Lopez, Cheryl Lopez**
**DOE'S 1 thru 11**
**2087 Loggia**
**Newport Beach, CA 92660**

**NOTICE IS HEREBY GIVEN** that, pursuant to the agreement by which you hold possession of the premises known as:

**2087 Loggia**
**Newport Beach, CA 92660**

there is now due and unpaid rent for said premises in the total sum of $2635, enumerated as follows: $2635 due for the period from May 1, 2015 Through May 31, 2015.

**$2635 TOTAL RENTS DUE *Payment of this amount is to be by CASHIER'S CHECK OR MONEY ORDER ONLY**

**WITHIN THREE (3) DAYS** after service of this notice upon you, you are required to pay the sums demanded herein or deliver up possession of said premises to Newport Bluffs Apartment Homes, authorized agent of Irvine Company Apartment Communities, Inc., your landlord or legal proceedings will be commenced against you to declare said agreement forfeited, recover possession of said premises, all rents due, damages, attorneys fees, court costs and statutory damages up to $600.00 for malice for the unlawful detention of said premises.

**YOU ARE FURTHER NOTIFIED** that your Landlord does hereby elect to declare a forfeiture of the agreement under which you hold possession of the premises described above.

Dated: 05/05/2015
*Authorized Management Person to receive
payments: Brent Christianson and/or other
management staff personnel
Place for payment:
100 Vilaggio
Newport Beach, CA 92660
Authorized/Management persons telephone
number: (949) 467-2120.

Management office hours:
9 a.m. to 6 p.m. Monday through
Saturday (Tuedays unitl 7pm) and
12 p.m. to 6 p.m. Sunday
Newport Bluffs Apartment Homes

By: Jennifer Gruwell
    Assistant Manager

19    exh "B"

# NOTICE TO PERFORM COVENANT
# OR DELIVER POSSESSION OF PREMISES

**TO: Arthur Lopez, Cheryl Lopez**
"AND ALL RESIDENTS, SUBTENANTS AND OTHERS IN POSSESSION"

**YOU ARE HEREBY NOTIFIED THAT IN** that certain lease dated
**11/19/2014  known as:**

**2087 Loggia**
**Newport Beach, CA 92660**

You have covenanted to do, but have breached the following terms and conditions:

1. LATE CHARGE:  Resident acknowledges that late payment by Resident to Landlord of rent will cause Landlord to incur costs not contemplated by this Lease, the exact amount of such costs being extremely difficult and impracticable to fix.  Such costs include, without limitation, processing and accounting charges and late charges that may be imposed on Landlord by the terms of any encumbrance and note encumbrance covering the Premises.  Therefore, if any installment of rent due from Resident is not received by Landlord when due, Resident shall pay to Landlord an additional sum of $50 as late charge.

YOU ARE HEREBY FURTHER NOTIFIED that within THREE (3) DAYS after service of this notice on you, you are required to pay outstanding fees in the amount of $150 and mail payment to the following address: 100 Vilaggio Newport Beach, CA 92660 or deliver up the possession of the same, or your Landlord will institute legal proceedings for unlawful detainer against you to recover possession of the premises, to declare said Lease forfeited and recover attorneys fees and court costs.

YOU ARE FURTHER NOTIFIED that by this notice your Landlord elects to and does hereby declare a forfeiture of said Lease if said covenants are not performed within the specified time.

Dated: 05/05/2015

                    IRVINE COMPANY APARTMENT COMMUNITIES, INC.

                    BY: Jennifer Gruwell

**This notice is being served concurrently with the Notice to Pay Rent or Surrender Possession curing payment of amount demanded herein does not void or cancel the other notice**

20

exh "B"

## SIXTY (60) DAY NOTICE TO TERMINATE TENANCY
(CC §1946 & 1946.1, Residential)

TO:   **Cheryl Lopez, Arthur Lopez**
and DOES 1 to 10, all other tenants, subtenants, and occupants in possession of the premises commonly known as:

**SUBJECT PREMISES:  2087 Loggia**
                                    **Newport Beach, CA 92660**

**PLEASE TAKE NOTICE THAT WITHIN SIXTY (60) DAYS** after the service on you of this notice, you are hereby required to quit, vacate, remove, surrender and deliver up possession of the above described premises to the landlord.  If you fail to quit possession of the premises within the sixty (60) days, the landlord will institute legal proceedings against you to recover possession of said premises, recover holdover damages, statutory and treble damages, the costs of suit, and reasonable attorney's fees.

This notice is intended as a sixty (60) day legal notice for the purpose of terminating your tenancy pursuant to and in accordance with CC §1946 & 1946.1 and is given for the reason and purpose of preventing any automatic renewal periods of the lease or rental agreement allowed thereunder or by virtue of law.  The rent shall be due and payable to and including the date of termination of your tenancy under this notice.

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit/rental obligations.

Under California law, you have a right to request that the landlord/lessor or his/her/its authorized agent make an initial inspection of the subject premises to determine its condition before you vacate, and you have the right to be present during the inspection.  The purpose of the inspection is to allow you an opportunity to remedy identified deficiencies or damage to the subject premises, if any, caused by you.  If you wish to have such an inspection, please contact the landlord/lessor or his/her/its authorized representative as soon as possible.  If you request an inspection, you will be given 48 hours' advance notice of the inspection, but you may waive in writing the required 48 hours' notice and have the inspection done sooner.

State law permits former tenants to reclaim abandoned personal property left at the former address of the tenant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact your former landlord after being notified that property belonging to you was left behind after you moved out.

Dated: ___11/18/15___                          _____
                                                              Owner/Manager
                                                              Newport Bluffs Apartment Homes
                                                              100 Vilaggio
                                                              Newport Beach, CA  92660-9021
                                                              (949) 467-2120

PENAL CODE SECTION 594 reads: "Every person who maliciously injures or destroys any real or personal property not his own . . . is guilty of a misdemeanor."

21

## LEASE

THIS LEASE ("Lease") is made as of <u>11/14/2014</u> by and between <u>Newport Bluffs LLC</u>("Landlord"), and <u>Cheryl Lopez, Arthur Lopez,</u> ("Resident").If there are multiple signers for Resident, each shall be jointly and severally liable and are all collectively referred to as "Resident" herein.

1. **Premises:**

   1.1. <u>Location</u>.  The premises is located at 2087 Loggia, Newport Beach, CA 92660 (the "Premises") in the Newport Bluffs Apartment Homes (the "Community"). The premises leased to Resident consist of a residential unit together with any appliances, window coverings, carpet and other furnishings listed on the move-in form, and the Garage and/or number of Parking Space(s) listed in Section 5. Landlord may change Resident's designated Garage and/or Parking Space(s) from time to time.

   1.2. <u>Condition</u>.  Resident has inspected the Premises and common areas and upon taking possession knows of their condition and the potential hazards they present, including, but not limited, to unsupervised children, including but not limited to lakes, streams, swimming pools, parking areas, balconies, windows and recreation areas. Resident accepts the Premises and common areas in their existing condition, and acknowledges that Landlord has made no representation or warranty of any nature regarding their condition or of the surrounding area where the Community is located. By Resident's signature on this Lease, Resident shall be deemed to acknowledge that Resident is satisfied as to all matters regarding the Premises and the Community.

2. **Term:**

   2.1. <u>Commencement</u>.  The term of the Lease commences on 11/19/2014 and ends on 01/18/2016 at 11:59 p.m (the "Term"). Landlord makes no representation that the Premises will be ready for occupancy on the commencement date of the Term. If Landlord is unable to deliver possession of the Premises at the commencement of the Term, Landlord shall not be liable for damages to Resident, but Resident shall not be responsible for payment of Rent for the period between the commencement of the Term and the time when Landlord delivers possession.  If Landlord is not able to deliver possession within thirty (30) days of the commencement date of the Term, either Landlord or Resident may, prior to the time when Landlord delivers possession, cancel this Lease by giving written notice to the other. The Term of the Lease as set forth herein shall not be affected by the move-in date.

   2.2. <u>Expiration</u>.  Upon expiration of the Term of this Lease, but not upon the earlier termination hereof, this Lease shall continue as a tenancy from month to month unless either (i) Landlord gives Resident at least sixty (60) days written notice  prior to the expiration of any Lease Term if the Resident has resided at the Premises for a year or longer or at least thirty (30) days written notice prior to the expiration of any Lease Term if the Resident has resided at the Premises for less than one year, that such month to month tenancy shall not commence, or (ii) Resident gives written notice to Landlord at least (30) days prior to expiration of the Term of Resident's election that such month to month tenancy shall not commence.  **In the event this Lease shall continue as a tenancy from month to month the terms and conditions of the Lease shall apply with respect to such tenancy, except the Term shall be deemed modified to provide that the tenancy shall be from month to month, and Landlord may, at its option, increase the Rent to the monthly rental rate set forth in a written notification to Resident. Resident acknowledges that this section contains provisions under which this Lease may automatically continue as a tenancy from month to month upon the expiration of the Term.**

   2.3. <u>Surrender</u>.  Upon termination of the tenancy, Resident shall vacate the Premises, and any holding over by Resident or other co-Residents, Occupants, members of Resident's household, Resident's family, guests, agents and others under Resident's control ("Resident's Related Parties") after such expiration date shall not constitute a renewal hereof or give Resident any rights with respect to the Premises. If Resident fails to so vacate and surrender the Premises upon termination, Resident shall indemnify and hold Landlord harmless from any loss or liability, including without limitation any claims made by any succeeding resident, from failure to vacate the Premises. Upon vacating the Premises, Resident shall (a) deliver the Premises empty of all persons, (b) remove all of Resident's personal property from the Premises and from all parking spaces and storage spaces provided under the Lease, (c) clean the Premises in accordance with the Rules and Move-Out Guidelines, and (d) provide Landlord with Resident's forwarding address.

3. **Rent:**

<u>Payment</u>.  Resident shall pay Landlord $ 2635.00 each month ("Rent")  in advance on or before the first (1st) day of each calendar month during the Term (the "Rent Due Date").  If Resident takes possession of the Premises on any day other than the first day of a month, Resident shall pay the initial Rent payment based on a 30-day proration (except February, which shall be prorated by the actual number of days in the month). In addition, all other monetary obligations of

Resident under this Lease (except the Security Deposit) shall be deemed to be additional rent. Any reference to the term "Rent" in this Lease shall be deemed to include additional rent. Rent and all other charges due Landlord shall be payable only by cashier's check, personal check or money order made payable to name of the Community specified in Section 1.1, or by online payment. No personal checks will be accepted in response to a notice to pay rent or quit or a notice to perform covenant or quit requiring payment. Payment made by check or money order should be mailed to Newport Bluffs Apartment Homes PO BOX 844776 Los Angeles, CA 90084-4776 or at such other place or in such other manner as Landlord may from time to time designate. Resident shall remit one check or money order for the Rent payable for the Premises, and shall write Resident's Unit number on the check or money order. *Any payments made by mail are made at Resident's risk and must be received by Landlord by the due date. To make a payment online, go the https://residents.irvinecompanyapartments.com webpage. Residents who wish to pay online will need to create a rent pay account. Instructions about how to create a rent pay account and make online payments is available at* http://marketing.irvinecompany.com/apartment_communities/resident/website/Create%20An%20Account.pdf . *Payments must be made online or mailed to the specified address above. Payments will not be accepted at the Community leasing office.* At Landlord's option and without notice, Landlord may apply payments received first to any of Resident's unpaid obligations, then to current rent, regardless of notations on checks or money orders and regardless of when the obligations arose. As required by law, Resident is hereby notified that a negative credit report reflecting on Resident's credit record may be submitted to a credit reporting agency if Resident fails to pay rent or other amounts owing under this Lease on time.

3.1. <u>Late Fees</u>. Resident acknowledges that if Resident pays Rent after the due date, Landlord will incur costs not contemplated by this Lease, the exact amount of such costs being extremely difficult and impracticable to determine. Such costs include, without limitation, processing and accounting charges. Therefore, if any installment of Rent due from Resident is not received by Landlord when due, Resident shall pay to Landlord an additional sum of <u>$50.00</u> as a late charge. The parties agree that this late charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of late payment by Resident. Landlord's acceptance of Resident's payment of any late charge shall not constitute a waiver by Landlord of Resident's default with respect to the overdue amount, nor prevent Landlord from exercising any other rights and remedies available to Landlord.

3.2. <u>Returned Check</u>. If Resident's personal check for Rent is not honored or is returned by Resident's financial institution for any reason ("Returned Check"), Landlord will treat this situation as if Resident has not paid Rent for that month. Resident shall be obligated to pay Landlord an additional fee of Twenty-five Dollars ($25.00) for any Returned Check. Resident shall replace any Returned Check with a cashier's check or money order only. After receipt of two (2) Returned Checks, Landlord shall thereafter accept only a cashier's check or money order for payment of Rent from Resident.

**4.   Security Deposit:** At the time Resident signs this Lease, Resident shall also pay Landlord a security deposit in the amount of $2635.00 ("Security Deposit") as security for the faithful performance of Resident's obligations under this Lease. Landlord shall have the right to commingle the Security Deposit with other funds of Landlord. Landlord may, at its option, deduct from the Security Deposit such amounts as are reasonably necessary (a) to remedy Resident's defaults in the payment of Rent, utility charges or any other item for which Resident is responsible under the Lease, (b) to repair damage (other than ordinary wear and tear) to the Premises caused by Resident and/or members of Resident's family, guests, licensees, visitors or pets, including but not limited to stains in carpet, counter damage, drywall repair, painting, drapes and plumbing system, (c) to clean the Premises upon termination of the tenancy, and/or (d) to cover the cost of restoring, replacing or reclaiming any personal property provided to Resident (such as garage door remote control devices, keys, and the like). The Security Deposit shall be refunded or applied as provided in California Civil Code Section 1950.5. In the event Landlord uses any part of the Security Deposit during the tenancy, Resident shall replenish the Security Deposit to its full amount within ten (10) days after Landlord's written notice to Resident of the deduction and Landlord's demand that the Security Deposit be replenished in full.

**5.   Parking:** Resident shall have the right to park 0 vehicles in the following parking spaces: Garage #418 (the "Parking Space(s)" and/or "Garage"). Use of the Garage or Parking Space(s) for anything

Other than as specified in the Rules is prohibited.

**6.   Occupancy:** Only the following people are permitted to live at the Premises (full name): <u>Cheryl Lopez, Arthur Lopez</u> (the "Occupants"). Resident agrees to use and maintain the Premises solely as a private residence for the Occupants and no other person(s) except for guests in accordance with the Rules.

23



2 of 8

7.  **Utilities:**  Resident shall be responsible for paying all utility services provided to the Premises as follows:

A. Electricity, Gas, Telephone, Cable Television and Internet/High Speed Data.  For each of these utilities that separately service the Premises, Resident shall be responsible for ordering and arranging for such utilities, as well as for satisfying any deposit or other requirements of the utility provider.

i.      Electricity. Resident is responsible for (a) notifying the electric utility provider promptly after move-in to transfer electric service to Resident's name, and (b) paying for electric service directly to the utility provider.  If Resident fails to so notify the utility provider of the transfer of service, Resident shall be billed by Landlord for the cost of any electric service provided to the Premises.  Additionally, Landlord may assess a fee not to exceed $25 for any NSF check.

ii.      Gas, Telephone, Cable Television and Internet/High Speed Data.  Resident acknowledges and agrees that (a) gas, telephone, cable television and internet/high speed data utilities will not be available to the Premises on Resident's move-in date if Resident fails to arrange for service in advance, and (b) Resident shall pay for each of these utilities directly to the provider of such service as billed by the provider.

B. Water and Sewer.    The Premises has been submetered and Resident shall pay for the services in the form of fixed and variable charges, which will be determined based on the billing method of the applicable water district. Resident shall pay for the services in accordance with billings sent directly to Resident by a third party billing company.  Resident acknowledges and agrees that the third party billing company may assess (i) a one-time account 'set-up fee' of not to exceed $5 will be charged by the billing company; (ii) a monthly billing fee not to exceed $5 for billing services and facility maintenance; (iii) a late charge not to exceed $5 per occurrence; and (iv) a fee not to exceed $25 for any NSF check.

C. Trash. The cost of trash service will be allocated based upon the number of Occupants on the Lease as a percentage of the total number of occupants listed on all leases in the Community.  Resident shall pay for trash service in accordance with billings sent directly to Resident by a third party billing company.  The cost of trash service will be either (i) included in the water and sewer service bill sent by the third part billing company as noted in Section B above, or (ii) billed separately by the third party billing company, in which event Resident will be charged a one-time account "set-up fee" not to exceed $5 and a monthly billing fee not to exceed $4 with each bill for trash service.  Additionally, the third party billing company may assess a late charge not to exceed $5 per occurrence and a fee not to exceed $25 for any NSF check.

D. Future Modifications. Landlord shall have the right at any time to change the method used to calculate any utility services allocated to the Premises, including but not limited to water and sewer service, upon at least thirty days' prior notice to Resident. In the event of such a change, Resident shall be responsible for paying all bills for utility usage attributed to the Premises in accordance with the applicable calculation method so changed by Landlord.

E. Failure to Pay.  The cost of any water, sewer or trash service provided to the Premises that is billed by a third party billing company is considered additional rent that becomes due in the month immediately following the date of the billing to Resident.  If Resident fails to pay any such bill by the due date, and the account becomes more than 120 days delinquent, this may, at Landlord's election, constitute a default under the Lease.

F. Estimated Billings for Submetered Utilities.  Charges for submetered utilities may be estimated (i) while the submeter is broken or does not transmit a meter reading or (ii) when Landlord has not received bills from the applicable water district in time to prepare Resident's invoice for utilities charges on Resident's final statement of account.  Resident agrees that it is reasonable to estimate utilities charges for submetered utilities in these circumstances, so long as Resident is reimbursed for any excess charges if the actual utility billings ultimately Show that Resident's usage or share was less than the amount of the "estimated" bill paid by Resident.

G. Landlord Liability for Utility Interruptions. Landlord will not be liable for any interruption, outage or fluctuation of any utilities furnished to the Premises or any damages or losses of any nature resulting from such utility interruption, outage or fluctuation, unless the loss or damage was the direct result of the willful misconduct or negligence of Landlord or its employees.  Resident releases the Landlord and waives all claims against the Landlord for any loss or damage of any nature arising from or relating to such interruptions, outages or fluctuations, except to the extent the loss or damage was the direct result of the willful misconduct or negligence of Landlord or its employees.

24

3 of 8

**8.  Use of Premises:**  Resident agrees to use the Premises and all common areas in accordance with, and to otherwise comply with, the Resident Policies, Rules and Regulations (the "Rules") established by Landlord from time to time and incorporated herein by reference. Resident has reviewed a current copy of the Rules. Resident shall not, and shall make sure that Resident's Related Parties shall not (a) disturb (including, but not limited to, loud or late parties, loud playing of stereos, musical instruments, etc.), interfere, annoy, endanger or inconvenience other residents of the Community, neighbors, Landlord, Landlord's property manager and the respective officers, directors, members, managers, partners, shareholders, employees, affiliates, agents and representatives of both Landlord and property manager ("Landlord's Related Parties") or (b) violate any law, nor commit or permit waste or nuisance in or about the Premises or the Community or (c) permit pets on the Premises unless specifically authorized in writing by Landlord. Resident shall not have any pets in the Premises at any time without entering into a Pet Addendum with Landlord.

Residents shall be responsible for the supervision and control of Resident's Related Parties while such persons are within the Premises or anywhere within the Community. Resident agrees to assume the risk of injury to Resident's Related Parties, and further agrees to hold Landlord and its agents harmless from any liability arising from the use of the Premises, recreational facilities or common areas by Resident's Related Parties. Without limiting any other indemnity contained herein, Resident agrees to fully defend and indemnify Landlord and its agents from any claim brought by or on behalf of Resident's Related Parties. Violation of Section 8, at Landlord's option, shall be deemed a noncurable breach of this Lease.

**9.  Alterations and Improvements:** Resident shall make no upgrades to, alterations of or improvements to the Premises without obtaining Landlord's prior written consent, including without limitation, painting, wallpapering, installing any other window covering, wall covering, permanent shelving and flooring, adding or changing any lock or locking device, bolt or latch on the Premises. In the event Landlord consents to any addition or change of lock, Resident shall provide Landlord with a key to any such lock or device upon installation thereof.  If Landlord agrees to any such upgrade, alteration or improvement, Resident acknowledges and agrees that upon Landlord's request upon expiration of the tenancy, Resident shall, prior to vacating the Premises, remove such upgrade, alteration or improvement and restore the Premises to the condition in which it existed prior to the installation of such upgrade, alteration or improvement. Resident shall not, as a result of any upgrades, alterations or improvements installed by or on behalf of Resident, create or allow any mechanics or other lien to be placed on the Premises or the Community.  If for any reason such lien is so created or placed, Resident shall, upon demand of Landlord, clear the same in a manner acceptable to Landlord and indemnify and save Landlord, the Premises and the Community free and harmless from any liability for any damage, claim, or loss arising therefrom.

**10.  Damage and Repairs:**

10.1. Notice.  Resident shall give Landlord immediate written notification if repairs to the Premises may be required. If after receipt of such notice, Landlord's inspection indicates that such repairs are needed, Landlord shall repair the Premises and the cost of such repair shall be paid by Resident unless the Premises is "untenantable" as defined in California Civil Code Section 1941.1 and such condition was not caused by Resident or Resident's Related Parties.

10.2. Damage.  Resident shall hold Landlord harmless from and shall pay on demand all reasonable costs of repair or restoration resulting from (a) any damage to or destruction of the Premises, any appliances, window coverings, carpet or other furnishings provided by Landlord, or (b) any portion of the Community resulting from any act or omission of Resident and/or Resident's Related Parties (collectively, "Resident Damage"), including without limitation, damage or destruction resulting from leaving windows open during rains or storms, flows of water from pipes, faucets or other sources, failure to report the presence of bedbugs or other pest infestations, mold or mildew, failure to turn off gas or electrical appliances or lights when not in use, and littering of the Premises or any portion of the Community.

10.3. Insurable Events.  In the event of damage to or destruction of the Premises or any portion of the Community by fire, flood, earthquake, or any other cause or causes other than Resident Damage (each, an "Insurable Event"), Landlord shall have the option to (A) treat this Lease as continuing and repair or restore the Premises to its condition before such Insurable Event; or (B) elect not to repair the damage, in which event this Lease shall terminate as provided in Landlord's written notice to Resident. After the occurrence of any Insurable Event, (a) Resident's obligation to pay Rent hereunder shall be abated in an amount which Landlord, in its sole discretion, shall determine to be proportionate to the area of the Premises rendered unfit for use by Resident during the period of repair or restoration; and (b) Resident's sole remedy against Landlord shall be rent abatement, and Resident shall not be entitled to any other award of damages or compensation from Landlord.

10.4. Relocation.  For any repairs that Landlord makes, Landlord shall have the right to cause Resident to vacate the Premises upon reasonable notice from Landlord. Resident shall not be entitled to any compensation for vacating the

Premises provided Resident is temporarily or permanently relocated to another residence in the Community, other comparable rental community owned by Landlord or its affiliate or hotel.

**11. Resident Insurance Requirements:** Resident shall maintain at all times during the Term of this Lease, at Resident's sole expense, a standard type of tenant's or Renter's Homeowners insurance policy, or its equivalent, issued by a licensed insurance company. Such policy shall provide limits of liability of (i) $100,000 personal liability, and (ii) the greater of $10,000 or the full replacement value of Resident's personal property, or greater amounts as may be needed as determined by Resident. If Resident elects to install a satellite dish as permitted by this Lease, Resident shall maintain public liability and property damage insurance with a single combined liability limit of $100,000.00 and property damage limit of not less than $50,000.00 insuring against claims for bodily injury, death or property damage occurring from the installation, maintenance, operation and/or removal of the satellite dish.  The policy shall name Landlord as an additional insured. Resident shall provide Landlord with proof of such insurance to Landlord's satisfaction before any satellite dish is installed. To the greatest extent allowed by law, Resident hereby (a) releases Landlord and Landlord's Related Parties from any and all claims for damages or loss to Resident's personal property (including any deductible and including loss caused by earthquake or other Insurable Event) and from any and all claims for personal liability, damages or loss in, on or about the Premises that are caused by or result from risks that are or would be insured under Resident's insurance coverage, including, but not limited to, damage or loss caused by fire, theft, rain, water overflows and leakage, and (b) waives any and all rights of recovery and rights of subrogation against Landlord and Landlord's Related Parties in connection with any damage, claim or loss that is or would be covered by Resident's insurance coverage.

**12. Landlord's Liability; Resident's Indemnity:**

12.1. <u>Limitation on Liability</u>.  To the greatest extent provided by law, Landlord and Landlord's Related Parties shall not be liable for any injury (including death) to any person caused by any use of the Premises or the Community by Resident, Resident's Related Parties, or arising from any other cause whatsoever, nor shall Landlord or Landlord's Related parties be liable for any loss or damage to any personal property belonging to Resident or located on the Premises, the Community or other facility under the control of Landlord. To the greatest extent allowed by law, Resident hereby agrees to hold Landlord and Landlord's Related Parties harmless from all liability for any such injury, loss or damage. To the extent allowed by law, Resident agrees to assume all risk of harm, and waive all claims against Landlord and Landlord's Related Parties, resulting from use of common area amenities, even if caused by the negligence of Landlord and Landlord's Related Parties.  To the extent allowed by law, use of the common area amenities is at the sole risk of Resident and Resident's Related Parties.

12.2. <u>Indemnity</u>.  Resident shall indemnify, defend and hold harmless Landlord and Landlord's Related Parties for any liability, damage, claims for  personal  injury and/or property damage, cost or expense (including reasonable attorneys' fees), whether incurred by or made against Landlord or Landlord's Related Parties, caused by the negligent, willful or intentional act or omission of Resident, or Resident's Related Parties. Resident also agrees that Landlord shall not be liable for matters (and this Lease shall not be terminated by any interruption or interference with services or accommodations due Resident) caused by strike, riot, orders or acts of public authorities, acts of other residents, accidents, interruption in or shortages of public utilities, the making of necessary repairs to the building of which the Premises are a part, or any other cause beyond Landlord's control. Resident shall also defend, indemnify and hold Landlord and Landlord's Related Parties harmless from and against any claims, costs and liabilities, including attorneys fees and costs, arising out of or in connection with (a) any storage, use and/or disposal of hazardous, toxic or radioactive matter (b) any damage or injury resulting from Resident's negligent or improper installation, maintenance, operation or removal of any satellite dish.

**13. Assignment and Subletting:** Resident shall not assign its interests under this Lease and shall not sublet all or any part of the Premises, or allow any other person or entity other than the Occupants, or guests pursuant to Section 6, to occupy or use all or any part of the Premises. Any attempted assignment, whether voluntary or involuntary, at Landlord's election, shall constitute a default.

**14. Defaults:** The following shall constitute a material default and a breach of this Lease by Resident:

A.  Resident abandons or vacates the Premises prior to the end of the Term.

B.  Resident fails to make any payment of Rent or any other payment required to be made by Resident hereunder, as and when due, which failure continues for a period of three (3) days after written notice thereof from Landlord to Resident.

C.  Resident fails to comply with any provision of this Lease or to perform any of Resident's obligations under this Lease, including but not limited to compliance with the Rules, where such failure continues for more than three (3)

days after written notice thereof from Landlord to Resident. If the breach is of a nature that cannot be cured within such three (3) day period or is deemed a noncurable breach under this Lease (e.g., illegal activity, waste, nuisance, violation of Sections 8, 13 or 13.D, etc.), then at Landlord's option, this Lease shall be terminated upon service of three days written notice to quit.

D. Resident provides false information on the Application to Rent or Resident's credit application or omits to disclose any information required by the Application to Rent or this Lease (such matter shall be deemed to be a noncurable default at the time of Landlord's discovery that the information was false).

**15. Remedies:** In the event of any default or breach by Resident, Landlord may at anytime thereafter, with or without notice or demand, and without limiting Landlord in the exercise of any right or remedy that Landlord may have by reason of such default or breach:

A. Terminate Resident's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Resident shall immediately surrender possession of the Premises to Landlord.

B. In the event of such termination, Landlord may recover from Resident the amount provided in California Civil Code Section 1951.2, including the worth at time of the award of the amount by which (i) the unpaid Rent owing from the date Resident vacates the Premises until the end of the Lease Term (including the balance of the Lease Term after the date of judgment) exceeds (ii) the amount of such rental loss for the same period that Resident proves could be reasonably avoided.

C. Pursue any other remedy now or hereafter available under the laws or judicial decisions of the state where the Premises are located. The expiration or termination of this Lease and/or the termination of Resident's right to possession shall not relieve Resident from liability under any indemnity provisions of this Lease as to matters occurring or accruing during the Term or by reason of Resident's occupancy of the Premises.

D. No remedy or election under this Lease shall be deemed exclusive, but shall, wherever possible, be cumulative with all other remedies at law or in equity.

**16. Limitation of Actions and Claims:** Any claim or action of any kind by Resident against Landlord or Landlord's manager (including, but not limited to, any claims for wrongful eviction, breach of the covenant of quiet enjoyment, breach of the warranty of habitability, or violation of any rent control law) arising out of or related to this Lease shall be barred or waived unless the action, suit, administrative hearing or other proceeding is commenced within one hundred eighty (180) days after the occurrence of the matter giving rise to the action or claim. This limitation shall also apply to claims that might otherwise be asserted as a "set off", credit, cross-complaint, or defense in such action or claim or in the context of the proceeding brought by either Landlord or Resident. If any legal action or proceeding is brought by either party to enforce any part of this Lease, the prevailing party shall recover, in addition to all other relief, reasonable attorneys' fees not to exceed $1,000, plus court costs.

**17. Disclosures:** Resident has received and reviewed a copy of the Community Disclosures as of the date of this Lease. The Community Disclosures are incorporated into the Lease by this reference.

**18. Detectors:** The smoke and carbon monoxide detection alarms in the Premises have been tested prior to Resident's move-in to insure operational performance. Resident shall not disable the smoke or carbon monoxide detection alarms. Resident is responsible for self-testing the smoke and carbon monoxide detectors on a monthly basis to insure their proper operation, and for replacing batteries as required. If the smoke or carbon monoxide detection alarms are not operational or Resident is unable to self-test the smoke or carbon monoxide detection alarm, the Resident must notify Landlord to arrange for inspection by Landlord's maintenance staff.

**19. Right of Entry:** After giving prior reasonable (not less than 24 hours) notice to Resident, Landlord may enter the Premises during normal business hours, (a) to make necessary or agreed repairs, (b) to install decorations, or to make alterations or improvements deemed necessary or desirable by Landlord, (c) to supply necessary or agreed services, (d) to show the Premises to workers and contractors and to prospective purchasers, lenders or tenants, and/or (e) to make an "initial move-out inspection" as described in the "Move-Out Guidelines". In addition, if a detached garage is included in the Premises leased to Resident, Landlord may, after giving prior reasonable (not less than 24 hours) notice to Resident, enter the Garage during business hours of the Community office to inspect the Garage for compliance with the terms of this Lease and Rules. Landlord may enter the Premises and/or any detached garage included within the Premises without advance notice to Resident and at any time (i) in case of an emergency, (ii) when Resident has abandoned or surrendered the Premises, and/or (iii) pursuant to court order or search warrant

**20. Release of Information:** Resident hereby grants Landlord the right to disclose information contained in Landlord's lease files regarding Resident or this Lease during or following the Term as follows: (a) in connection with the filing of

6 of 8

negative credit report information as a result of Resident's failure to pay for amounts owing hereunder, (b) pursuant to subpoena, court order, applicable law or regulation, or governmental request, or (c) where necessary for Landlord's accountants, attorneys or insurers in connection with Landlord's business operations. Nothing contained in this Lease should be construed to create any expectation of privacy by Resident regarding information pertaining to Resident, the Lease and/or information concerning Resident and/or the Lease contained in Landlord's lease files.

**21. Notices, Demands, Requests And Service Of Process:**

   A.   All notices, demands and requests that may be or are required to be given pursuant to the provisions of this Lease may be served pursuant to California Code of Civil Procedure Section 1162. Any such notice shall be given as follows:

      i.   If to Landlord, the Notice shall be sent to Brent Christianson (the "Community Manager") at 100 Vilaggio, Newport Beach, CA, 92660-9021 or to such other person or to such other address as Landlord may hereafter designate by written notice.

      ii.   If to Resident, the Notice shall be given to Resident at the address of the Premises specified in Section 1.1 above.

   B.   Service of process upon Landlord may be served as provided by law upon Landlord's authorized agent at the following address or upon such other person or at such other address as Landlord may designate by written notice: The Irvine Company, General Counsel Office, 550 Newport Center Drive, Newport Beach CA 92660 (949) 720-2000.

   C.   Landlord's requests and notices to any person comprising Resident constitute notice to all persons comprising Resident and all Occupants. Notices and requests from any person comprising Resident or any Occupant (including notices of lease termination, repair requests and entry permissions) constitute notice from all persons comprising Resident.

**22. Survival:** No indemnity in this Lease shall in any way limit any other indemnity contained in this Lease. Resident's obligations in Sections 2.2, 2.3, 4, 8, 9, 10, 11, 12.2, 15 and 15 shall survive the expiration and/or termination of this Lease.

**23. Time:** Time is of the essence in this Lease.

**24. No Waiver:** No failure by Landlord to enforce any term of this Lease shall be deemed to be a waiver of Landlord's right to enforce such provision on the same or any future occasion, nor shall Landlord's acceptance of a partial payment of rent be deemed a waiver of Landlord's right to the full amount of rent. Landlord's acceptance of rent with knowledge of any default by Resident shall not be deemed a waiver of such default, nor shall it limit Landlord's rights, including Landlord's rights to terminate the Lease, Landlord's rights under any notices served upon Resident, or Landlord's right to file and prosecute an unlawful detainer action.

**25. Interpretation:** Headings at the beginning of each section are solely for the convenience of the parties and are not a part of and shall not be used to interpret this Lease. The singular form shall include the plural, and vice versa. In the event of any conflict between the terms and provisions of this Lease and applicable California law, California law shall control, unless waived herein. If any provision of this Lease, or its application to any person, place or circumstance, is held by an arbitrator or court of competent jurisdiction to be invalid, unenforceable, or void, such provision shall be enforced to the fullest extent permitted by law, and the remainder of this Lease and such provision(s), as applied to other persons, places and circumstances, shall remain in full force and effect.

**26. Entire Agreement:** This Lease, together with the Rules and Disclosures, constitutes the entire agreement between Landlord and Resident. The parties consider each and every term, covenant and provision of this Lease to be material and reasonable. This Lease supersedes any and all oral or written representations or agreements that may have been made by either party prior to or on the date Landlord and Resident execute this Lease. Any modification to the terms of this Lease must be in writing and signed by both Landlord and Resident to be effective and enforceable.

Resident understands that the tenancy will automatically continue on a month-to-month basis at the end of the term specified in paragraph 2.1 above, until terminated as allowed by law.

RESIDENT:

NAME: _____ DATE: 11/14/14          LANDLORD:

NAME: _____ DATE: 11/14/14          Newport Bluffs LLC

NAME: _____ DATE: _____

NAME: _____ DATE: _____        By: The Irvine Company Apartment Communities, Inc.,
                                                a Delaware corporation, its duly authorized agent
NAME: _____ DATE: _____

NAME: _____ DATE: _____            By: _____

NAME: _____ DATE: _____